UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-60196-CR-COHN/SELTZER

UNITED STATES OF AMERICA

v.

HECTOR MANUEL GARCIA
a/k/a "Hemo",

        Defendant.

_____

### GOVERNMENT'S MOTION FOR PRETRIAL DETENTION AND FACTUAL PROFFER IN SUPPORT THEREOF

The United States of America, through the undersigned Assistant United States Attorney, files this Motion for Detention Pending Judicial Proceedings and Factual Proffer in support thereof. This motion is made pursuant to 18 U.S.C. § 3142 (f) on the ground that no condition or combination of conditions of release will reasonably assure the safety of any other person or the community. As detailed below, the defendant's criminal history, including convictions for drug trafficking and crimes of violence, together with repeated instances of committing other crimes while on supervised release, demonstrate by clear and convincing evidence that this defendant is a danger to the community and should be detained pending judicial proceedings.

    1.    **The Statute**

The Pretrial Detention Statute (18 U.S.C. § 3142 (f)) provides that the judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community - (1) upon motion of the attorney for the Government, in a case that involves –

(C)  an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.); or

(D) any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses.

The defendant meets both of these criteria.

Moreover, the statute raises a rebuttable presumption in favor of detention if the judicial officer finds that there is probable cause to believe that the person committed – (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.).  In this case, the Indictment is *prima facia* evidence of the existence of probable cause.  In addition, the factual proffer below establishes not only probable cause, but also the weight of the evidence against the defendant is great.  See § 3142(g)(2) (listing as one of the factors the Court shall consider as the weight of the evidence against the person).

    2.     **Garcia's Criminal History**

Garcia began his criminal career in 1975 at the early age of twenty-two with convictions in Richmond Virginia for felony murder and felony robbery – malicious wounding.  He was sentenced to 20 years imprisonment (NCIC report).  Apparently Garcia was paroled from that conviction in 1980 and relocated to New Jersey where he took up trafficking in narcotics.  In September 1983, Garcia was indicted by a New Jersey Grand Jury for conspiracy to distribute cocaine.  He went to trial, was convicted, and sentenced to eight years in the New Jersey State Prison in January 1986 (certified convictions obtained).

In 2006, Garcia was indicted and convicted in the District of South Carolina of conspiracy and possession with intent to distribute more than 500 grams of cocaine, in violation of Title 21 U.S.C. §§ 841(a)(1) & 846. He was sentenced to 65 months imprisonment followed by 6 years supervised release.

3. **Garcia Committed the Instant Offenses While On Supervised Release**

Garcia was released from prison in 2010 and commenced supervision in the Southern District of Florida on or about October 28, 2010, after his supervised release was transferred (11-TP-20112-Ungaro). Garcia tested positive for cocaine use on three separate occasions (December 27, 2011, January 24, 2012, and August 30, 2012) while on supervised release (11-TP-20112-Ungaro DE 2, 3, and 5). After the first violation his supervised release was modified without hearing to include 50 hours of community service (DE 2). The second violation resulted in a modification without hearing to include 60 days of electronic monitoring (DE 3). After the third violation, Garcia's supervised release was revoked and he was sentenced to 30 days imprisonment with no supervised release to follow (DE 20).

The instant cocaine offenses occurred on June 17, 2011 and August 22, 2011, while Garcia was on supervised release. This, together with his personal use of cocaine, demonstrates that Garcia is a danger to the community and that conditions of release mean nothing to him. See § 3142(g)(3)(B) (listing as one of the factors the Court shall consider as whether, at the time of the current offense, the person was on release … pending completion of a sentence for an offense under Federal law*); see also United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985) (finding that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of danger).

4.     **The Offense Conduct**

The indictment in this case has been brought as a result of an FBI investigation into the Pagans Motorcycle Club ("PMC"). The investigation was based, in part, upon the cooperation of a confidential human source (CHS) who is a former member of the PMC and has multiple felony convictions. The CHS is a paid source. At the time of the below described transactions the CHS and Garcia were members of the PMC.

**Count 1**

On June 17, 2011, the CHS and another PMC member drove to the residence of Jorge Duquen located at 8882 NW 176 Street, Hialeah FL. Garcia and Duquen ("Hemo" and "Hawk" respectively) are both patched members of the PMC and live in Miami-Dade County. They also both deal in cocaine. The other PMC member had previously set up a deal to purchase 2 ounces of cocaine from Garcia. Prior to meeting with Garcia, FBI Special Agent (SA) Richard A. Miller met with the CHS and provided him with $2,000 and an audio recording device to purchase two ounces of cocaine from Garcia. FBI agents set up surveillance outside the house.

When the CHS and other PMC member arrived at the house surveillance had already observed a green Lincoln Town Car (Duquen's vehicle) and dark colored Ford Expedition in the driveway. It was later observed that Garcia drove the Expedition and Duquen drove the Town car. Garcia and Duquen were inside the house waiting for the CHS to arrive.

The conversation recorded by the CHS inside the house captures a discussion between the CHS, Duquen, and Garcia wherein Garcia fronts the PMC member 2 ounces of cocaine and the CHS requests 2 ounces for himself. Garcia agreed to sell CHS two ounces of cocaine but stated that he would have to go back to his house and pick it up. The price discussion went as follows:

| | |
|---|---|
| CHS: | How much is a ounce of this? |
| HG: | One "D" note. |
| CHS: | One "D" note?  How about I get two of 'em? |
| HG: | You want two of 'em? |
| CHS: | What'll you do me two for? |
| JD: | Cash? |
| CHS: | Cash. |
| HG: | Nine fifty? |
| CHS: | Nine? |
| HG: | Nine fifty. |
| CHS: | Nine? |
| HG: | (UI) I can get nine fifty cause he's gotta give me money and I gotta, and we gotta. |
| CHS: | Alright.  Nine fifty. |
| HG: | You know?  You want two? |
| CHS: | Give me two, give me two. |
| HG: | Okay.  I'll go, I have to go get 'em. |
| CHS: | Alright. |

Before Garcia left to get the cocaine (observed by surveillance), everybody agreed to meet back up at Cagney's Saloon in Davie, FL in Broward County.  The CHS paid Garcia $1,900 cash for the two ounces of cocaine before he left.  The money is counted out on the tape by the CHS as follows:

5

HG: You, you gotta have nineteen hundred.

CHS: I got right here, brother. Let's do it. A thousand here, count it.

HG: One, two, three, four, five, six, seven, eight, nine, ten.

CHS: Okay. Eleven.

HG: One, two, three, four, five, eleven. Twelve.

CHS: It's a lot easier this way.

HG: Thirteen. Fourteen. Fourteen.

CHS: Fifteen.

JD: Fifteen.

HG: Fifteen?

CHS: Yeah. That's fifteen.

HG: Two, three, four, five. Sixteen. Seventeen.

CHS: Seventeen.

HG: Eighteen.

CHS: Money.

JD: (UI) Okay?

HG: Alright.

CHS: See, that's why I'd rather do the cash, 'cause I can't be responsible if I have to throw something out the window, I run or something happens.

    The CHS then drove to Cagney's Saloon where he met with Garcia who delivered to him 2 ounces of cocaine. Although the delivery of the cocaine by Garcia to the CHS was not recorded, surveillance agents can corroborate that Garcia did show up at Cagney's Saloon and met with the

6

CHS by his car in the alleyway behind the Saloon.

### Count 2

On August 17, 2011, the CHS called Garcia on the phone and arranged to meet him for the purpose of purchasing an ounce of cocaine. Garcia agreed to meet the following Wednesday on Commercial Blvd. in Broward County to deliver the cocaine. The relevant portion of the call is as follows:

HG:  Yeah, listen, yeah, I'll have two, I'll have two for you.

CHS:  All right very cool brother.

HG:  Guaranteed, okay?

*************************************************************

CHS:  Could you, could you, all right, could you meet me like half way, by any chance?

HG:  Yeah, listen, okay no listen, I work on Commercial Boulevard.

CHS:  Okay.

HG:  Okay?

CHS:  Right.

HG:  Come down to around Pompano uh… somewhere in the vicinity… 2:00 or 3:00 o'clock in the afternoon and I'll be waiting for you there.

CHS:  On Commercial Boulevard.

HG:  [UI]… okay?

CHS:  Uh… you got it bro.

On August 22, 2011, surveillance agents followed the CHS to Broward County where Garcia delivered an ounce of cocaine to him. The transaction was recorded as follows:

7

CHS:        How much is this gonna be?

HG:         Nine hundred.

CHS:        Nine?

HG:         I'm gonna save you fifty dollars.   Don't say nothin' in the hall for nothing.' Okay?

C1:         Alright.

HG:         But, the thing is, is, is the little eight balls.   Okay?

CHS:        Oh, it's in eight balls?

HG:         In eight balls, already measured.   But it's a whole ounce.

C1:         Okay, because that…

HG:         Okay?   You got eight eight balls.

The substances were submitted to the Drug Enforcement Administration (DEA) laboratory for analysis.  According to DEA analysis, the active ingredient in the substance was Cocaine Hydrochloride.   The net weight of the cocaine purchased on June 17, 2011, was 54.7 grams.   The net weight of the cocaine purchased on August 22, 2011, was 27.2 grams.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By:   *s/Russell R. Killinger*
RUSSELL R. KILLINGER
ASSISTANT UNITED STATES ATTORNEY
Florida Bar Number 312851
101 South U.S. Highway 1, Ste 3100
Fort Pierce, Florida 34950
Telephone:    (772) 466-0988
Facsimile:     (772) 466-1020

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By:  *s/Russell R. Killinger*
RUSSELL R. KILLINGER
ASSISTANT UNITED STATES ATTORNEY